**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DAVID PAGE**                                                    **CIVIL ACTION**

**VERSUS**                                                        **NO.  12-2151**

**N. BURL CAIN, WARDEN**                                          **SECTION "F"(4)**

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including

an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant

to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section**

**2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be

disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

I.     **State Factual and Procedural Background**

The  petitioner, David Page, ("Page") is a convicted inmate currently incarcerated in the

Louisiana State Penitentiary in Angola, Louisiana.[2]  On March 15, 2007, Page and a co-defendant,

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

Darnell Junior, were indicted by a Grand Jury in Jefferson Parish for the second degree murder of

Moneir Gindy.[3]  Page entered a plea of not guilty to the charge on March 22, 2007.[4]

The record reflects that, around 11:59 p.m. on January 4, 2007, Jefferson Parish Sheriff's

Deputy Leon James responded to the scene of a shooting at the Villa D'Ames apartment complex

in Marrero, Louisiana.[5]  He found a black and gold taxi cab parked in the parking lot with the engine

running, both rear doors open, and a white male slumped over the steering wheel.  When emergency

medical personnel arrived, Deputy James assisted them in removing the man from the cab.  The

victim, who was later identified as Moneir "Moon" Gindy, had suffered a gunshot wound to his right

chest which lacerated his liver, and he was pronounced dead at the scene.  Gindy's wallet and

$186.00 in cash were found on his person, but his left front pants pocket was turned inside out with

nothing inside of it.

David Garrison had known Gindy for approximately five years and had used his cab services

five days a week while working as a disc jockey in a club in the French Quarter.  Around 11:00 p.m.

on the night of the murder, Gindy provided Garrison a ride from the Bywater area on the Eastbank

to the Villa D'Ames apartments where his girlfriend lived.

Before getting out of the cab, Garrison spoke with Gindy about the possibility of Garrison's

cousin buying prescription pain pills from Gindy, who took the medication due to ruptured discs in

his back.  Gindy was to wait for Garrison in the cab while he checked with his cousin.  Garrison saw

Page and a man known as "Poppa" talking in the parking lot.

---

[3]St. Rec. Vol. 1 of 10, Indictment, 3/15/07; Grand Jury Return, 3/15/07.

[4]St. Rec. Vol. 1 of 10, Minute Entry, 3/22/07.

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Page*, 28 So.3d 442, 445-46 (La. App. 5th Cir. 2009); St. Rec. Vol. 10 of 10, 5th Cir. Opinion, 08-KA-531, 11/10/09.

After leaving the cab, Garrison ran into his girlfriend, Tenille Williams, who was returning from the store, and the two went to his cousin's apartment where they started arguing. Garrison called Gindy's cell phone to tell him he was coming back, but Gindy did not answer. Garrison and Williams continued their argument, at which time they heard a gunshot. Williams immediately looked out of the window, heard sirens, and saw police arrive on the scene. Meanwhile, Garrison left the apartment complex.

No witnesses came forward on the night of the murder. Within 24 hours, however, the police learned the names of one witness from a confidential informant. The witness, Kecia Blair, ultimately led the police to Page and Junior as suspects. Blair lived in the ground floor apartment of the building near the murder scene. On the night of the murder, she was standing at the window that overlooks the parking lot when she saw the cab pull up and Garrison get out. After the cab had been parked for approximately five to ten minutes, her phone rang and she turned to answer it. When she returned to the window, she saw Page and Junior get into the back seat of the cab.

Blair felt the cab had been parked there too long, so she went to the back of the apartment to get her brother. She then heard gunshots and immediately returned to the window. She saw Page and Junior walking away from the cab at a fast pace.

Blair did not report this to the police that night, and instead told a friend of hers what she saw. She was contacted the next day by the police at which time she gave a statement. She identified the men she saw as "Big Fot" and "Poppa," and she showed the police where each man lived. She later identified Page as "Big Fot" and Junior as "Poppa" in a photographic lineup.

Based on this information, the police obtained arrest warrants for Page and Junior. Page was arrested six days after the murder. After waiving his rights, Page gave a taped statement admitting

3

that he was at the scene next to the cab, but that "Poppa" shot the victim.  Page explained in his statement that he had been at a girl's house when they all went to the Villa D'Ames complex.  He told police that he saw Junior retrieve a long camouflage gun from the bushes, walk up to the cab driver, and ask for money.  He also reported that, when the driver refused to give Junior money, Junior pulled the trigger.  Page denied that he or Junior entered the cab at anytime.

Page was tried separately[6] before a jury on October 16, 17 and 18, 2007, and was found guilty as charged.[7]  On November 13, 2007, the Trial Court sentenced Page to serve life in prison at hard labor without benefit of parole, probation, or suspension of sentence.[8]

On direct appeal, Page's appointed counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), finding no non-frivolous issues to raise on appeal, and withdrew from the case.[9] Page thereafter filed a *pro se* supplemental brief in which he argued the following errors:[10] (1) the indictment was constitutionally deficient; (2) the Trial Court lacked jurisdiction because of the defective indictment; (3) the evidence was insufficient to support the verdict; (4) the sentence was not imposed with credit for time served; and (5) the court should review the record for errors patent.

Page later enrolled private counsel, who filed another supplemental brief presenting additional grounds in support of the insufficient evidence claim and raising an additional error that

---

[6]St. Rec. Vol. 1 of 10, Minute Entry, 7/17/07 (motion to sever granted); Hearing Transcript, p. 61, 7/17/07.

[7]St. Rec. Vol. 1 of 10, Jury Verdict, 10/18/07; Trial Minutes, 10/16/07; Trial Minutes, 10/17/07; Trial Minutes, 10/18/07; Trial Transcript, 10/17/07; St. Rec. Vol. 2 of 10, Trial Transcript (continued), 10/17/07; St. Rec. Vol. 3 of 10, Trial Transcript (continued), 10/17/07; Trial Transcript, 10/18/07; St. Rec. Vol. 4 of 10, Voir Dire Transcript, 10/16/07; St. Rec. Vol. 5 of 10, Voir Dire Transcript (continued), 10/16/07; St. Rec. Vol. 6 of 10, Voir Dire Transcript (continued), 10/16/07.

[8]St. Rec. Vol. 1 of 10, Sentencing Minutes, 11/13/07; St. Rec. Vol. 3 of 10, Sentencing Transcript, 11/13/07.

[9]St. Rec. Vol. 3 of 10, Appeal Brief, 08-KA-0531, 8/5/08.

[10]St. Rec. Vol. 3 of 10, *Pro Se* Supplemental Brief, 08-KA-531, 1/22/09.

the prosecution improperly introduced evidence of other bad acts or crimes.[11]  On November 10, 2009, the Louisiana Fifth Circuit affirmed Page's conviction and sentence finding no merit in any of the errors raised.[12]

Page's private counsel filed a writ application with the Louisiana Supreme Court on December 10, 2009, raising only the two claims counsel argued on direct appeal.[13]  The Louisiana Supreme Court denied the writ application without stated reasons on June 4, 2010.[14]

Page's conviction and sentence became final 90 days later, on September 2, 2010, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S.Ct. Rule 13(1).

On June 1, 2011, Page's counsel filed an application for post-conviction relief in the Trial Court raising seven grounds:[15] (1) Page was denied effective assistance of trial counsel when counsel failed to object to the improper rebuttal as other crimes evidence; (2) Page was denied effective assistance of trial counsel when counsel failed to request a limiting instruction on the rebuttal evidence; (3) Page was denied effective assistance of trial counsel when counsel allowed Michael Knox to be on the jury; (4) the Trial Court gave an erroneous definition of principals to the jury; (5) Page was denied effective assistance of trial counsel when counsel failed to object to the definition

---

[11]St. Rec. Vol. 1 of 3, Supplemental Brief, 08-KA-531, 3/1/09; Motion to Enroll, 3/6/09.

[12]*State v. Page*, 28 So.3d at 442; St. Rec. Vol. 10 of 10, 5th Cir. Opinion, 08-KA-531, 11/10/09.

[13]St. Rec. Vol. 10 of 10, La. S. Ct. Writ Application, 09-K-2684, 12/10/09; La. S. Ct. Letter, 2009-K-2684, 12/10/09.

[14]*State v. Page*, 38 So.3d 299 (La. 2010); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2009-K-2684, 6/4/10.

[15]St. Rec. Vol. 8 of 10, Application for Post-Conviction Relief, 6/1/11.

of principals; (6) the evidence was insufficient to support the conviction because the evidence did not foreclose his actual innocence and the State failed to prove that Junior or Garrison shot Gindy; and (7) Page was denied effective assistance of trial counsel when counsel failed to conduct a pretrial investigation sufficient to refute the State's evidence, did not request for the jury to be brought into the courtroom for additional instructions, and failed to present evidence to corroborate Page's pretrial statement or to connect phone records, handwriting and fingerprints to Junior or Garrison.

After receiving the State's opposition response, the Trial Court denied relief on September 20, 2011.[16]   The Court found the claim challenging the principals charge was procedurally barred under La. Code Crim. P. art. 930.4(B), because it could have been and inexcusably was not raised on direct appeal.   The court also found that Page's claim of insufficient evidence tied to his actual innocence was procedurally barred under La. Code Crim. P. art. 930.4(C), because sufficiency of the evidence was reviewed on direct appeal and procedurally barred under La. Code Crim. P. art. 930.3 because a claim of actual innocence is not a basis for post-conviction review.   The Court further resolved that Page's claims of ineffective assistance of counsel were without merit where he failed to meet the standards of *Strickland v. Washington*, 466 U.S. 668 (1984) and related state law.

Page's counsel timely filed a writ application with the Louisiana Fifth Circuit urging the same seven grounds for relief.[17]   In its reasoned decision issued January 14, 2012, the Louisiana Fifth Circuit found no error in the Trial Court's denial of relief on Page's five ineffective assistance

---

[16]St. Rec. Vol. 8 of 10, State's Response, 9/6/11.

[17]St. Rec. Vol. 9 of 10, 5th Cir. Writ Application, 11-KH-1094, 11/23/11; St. Rec. Vol. 7 of 10, Notice of Intent, 9/28/11; Trial Court Order, 10/26/11.

of counsel claims.[18]  The Court also found no error in the Trial Court's procedural denial of relief

on the claims challenging the definition of principals and the sufficiency of the evidence since both

matters were reviewed on direct appeal.

Page's counsel returned to the Louisiana Supreme Court on February 3, 2012, with a writ

application urging the same seven claims.[19]  The Court denied relief without stated reasons on May

25, 2012.[20]

## II.    Federal Petition

On August 24, 2012, the clerk of Court filed Page's federal petition for habeas corpus relief

in which he raises the following grounds for relief:[21] (1) The evidence was insufficient to support

the conviction; and (2) He was denied effective assistance of trial counsel when counsel (a) failed

to request a limiting instruction on the other crimes rebuttal evidence, (b) failed to object to the

definition on the law of principals, and (c) failed to perform pretrial investigation and require the

jury to be present to receive additional instructions.

The State filed a response in opposition to the petition conceding that the petition was timely

filed and the claims were exhausted.[22]  The State argues that Page's claims are without merit and

denial of relief by the state courts was not contrary to or an unreasonable application of federal law.

---

[18]St. Rec. Vol. 7 of 10, 5th Cir. Order, 11-KH-1094, 1/14/12.

[19]St. Rec. Vol. 10 of 10, La. S.Ct. Writ Application, 12-KP-0333, 2/3/12; La. S.Ct. Letter, 2012-KP-333, 2/3/12.

[20]*State v. Page*, 90 So.3d 410 (La. 2012); St. Rec. Vol. 10 of 10, La. S.Ct. Order, 2012-KP-0333, 5/25/12.

[21]Rec. Doc. No. 1.

[22]Rec. Doc. No. 12.

In his reply to the State's opposition, Page argues that the evidence left open other reasonable hypothesis of his innocence and otherwise repeats the arguments appearing in his original brief.[23]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[24] applies to this petition, which is deemed filed in this Court no later than May 2, 2012.[25]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  As noted above, the State concedes timeliness, exhaustion and these claims are not in procedural default.  The Court will address the merits of Page's claims.

---

[23]Rec. Doc. No. 13.

[24]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Page's federal habeas petition on August 24, 2012, when pauper status was granted.  Page dated his signature on the form petition on August 20, 2012.  In addition, the pleadings are marked received from him by prison officials on August 20, 2013, when he delivered the pleadings for scanning and e-mailing to the court for filing.  Rec. Doc. No. 1-2, p. 122.  This is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for mailing to the Court.

IV.     __Standards of Review on the Merits__

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2)

extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V.     Sufficiency of the Evidence (Claim No. 1)

Page argues that the circumstantial evidence did not foreclose the reasonable possibility that either Garrison or Junior was the shooter and that no direct evidence was presented to prove Page to be the perpetrator. The State argues that the claims are meritless and were properly resolved by the Louisiana courts.

Page's counsel raised the identical arguments on direct appeal to the Louisiana Fifth Circuit.[26]  Relying on *Jackson* and related state case law, the Louisiana Fifth Circuit thoroughly reviewed the evidence and testimony presented to the jury and found that the evidence, in the light most favorable to the prosecution, supported the guilty verdict.  The Court also noted that the credibility calls made by the jury were not to be second guessed and the evidence was not to be re-weighed.  The Court also found that the State had negated any reasonable probability of misidentification and that the evidence was sufficient to hold Page as a principal.  This was the last reasoned opinion on this issue because the Louisiana Supreme Court denied relief without stated reasons.[27]  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson v. Virginia*, relied on by the state courts, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011).  Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.  Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."  La. Rev. Stat. Ann. § 15:438.  However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead

---

[26]Page's arguments to this Court are almost verbatim to those made by his counsel in the second supplemental appeal brief rather than those made in Page's *pro se* appeal brief.

[27]As outlined above, Page's efforts to reassert this claim adding new supporting arguments was procedurally barred from post-conviction review by the state courts on the basis of actual innocence and the State's failure to overcome the reasonable hypothesis of Garrison's or Junior's guilt.

must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 208 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *accord State v. Williams*, 693 So.2d at 208. The appropriate standard for this Court remains *Jackson*.

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

Furthermore, the Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial.") (quoting *Jackson*, 443 U.S. at 324). The review of the sufficiency of the

evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

Claims of insufficient evidence present a mixed question of law and fact. *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*. *Gilley*, 968 F.2d at 467 (citing *Schrader*, 904 F.2d at 284).

Page was charged with and convicted of second degree murder, which is defined in relevant part by Louisiana law as "the killing of a human being . . . [w]hen the offender has a specific intent to kill or to inflict great bodily harm; or . . . [w]hen the offender is engaged in the perpetration or attempted perpetration of . . . armed robbery, . . . even though he has no intent to kill or to inflict great bodily harm . . ."[28] La. Rev. Stat. Ann. § 14:30.1(A)(1),(2). In Louisiana, "[a]rmed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous

---

[28]This portion of the definition is based on the language used by the Trial Court to charge the jury in Page's case. St. Rec. Vol. 1 of 10, Jury Charges, p. 10, 10/18/07.

weapon." La. Rev. Stat. Ann. § 14:64; *State v. Collins*, 910 So.2d 454, 457-458 (La. App. 5th Cir. 2005).

Louisiana law defines a "principal" to a crime as a person "concerned in the commission of a crime, whether present or absent and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." La. Rev. Stat. Ann. § 14:24. Not all principals are automatically guilty of the same grade of an offense; a principal instead may be charged with and convicted of a higher or lower degree of the crime, depending on the mental element proved at trial. *State v. Tate*, 851 So.2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So.2d 714, 717 (La. 1987)). It is not enough that the defendant's accomplice had the requisite intent; the State must prove that the defendant had the required mental element. *Id.*, 851 So.2d at 930.

The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. Ann. § 14:10(1). Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. *State v. Sharlhorne*, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989); *State v. Tate*, 851 So.2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So.2d 714, 717 (La. 1987)). Specific intent to kill also can be implied by the intentional use of a deadly weapon, such as a knife or a gun. *State v. Collins*, 43 So.3d at 251 (citing *State v. Brunet*, 674 So.2d 344, 349 (1996)). Thus, to establish specific intent, the State must show that the defendant pulled the trigger, that he acted in concert with his accomplice or co-perpetrator, or that he actively acquiesced in the use of deadly force. *State v. Tate*, 851 So.2d at 930.

14

Under Louisiana law, armed robbery is a general intent crime. *State v. Bowers*, 909 So.2d 1038, 1045 (La. App. 2d Cir. 2005); *State v. Tolliver*, 818 So.2d 310, 315 (La. App. 2nd Cir.2002). "General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. Rev. Stat. Ann. § 14:10(2). In Louisiana law, general intent "is shown by the very doing of the acts which have been declared criminal." (citation omitted) *State v. Oliphant*, 113 So.3d 165, 172 (La. 2013).

Thus, the State would have to prove Page's guilt by establishing that he killed Gindy or was a principal in the killing while he or the killer had the specific intent to kill or to inflict great bodily harm, or that he killed Gindy or was a principal in the killing when he or the killer were engaged in the perpetration or attempted perpetration of an armed robbery without regard for whether there was an intent to kill or inflict great bodily harm.

The record supports the findings made by the state appellate court in the last reasoned opinion on the issue. The testimony at trial established that Deputy Leon James arrived at the scene of the reported shooting and found the taxi cab still running with the front doors closed, both back doors open, and Gindy slumped over the wheel having suffered a gunshot wound to the right side of his chest.[29] The passenger side front window was also down.[30] Deputy James also located a spent

---

[29]St. Rec. Vol. 1 of 10, Trial Transcript, p. 25 (Deputy Leon James), 10/17/07; St. Rec. Vol. 2 of 10, Trial Transcript (continued), p. 31 (Deputy Leon James), 10/17/07.

[30]St. Rec. Vol. 2 of 10, Trial Transcript (continued), p. 32 (James), 10/17/07.

15

shotgun shell casing on the ground on the front passenger side of the vehicle.[31] Although his wallet and cash were still in his pockets, Gindy's right front pants pocket had been turned out with nothing in it.[32] A untouched BB gun was found beneath trash under the driver's seat.[33]

The autopsy revealed that Gindy was shot by a shotgun at close range, from six to twelve inches away, and the pellet sleeve from the shell entered his body, lacerated the right liver which caused his death.[34] Gindy had opiate type drugs consistent with pain medication in his system.[35]

Earlier that night, David Garrison called Gindy, whom he had known and used for taxi service for five years, to get a cab ride to his girlfriend Tenille Williams's apartment at Villa D'Ames.[36] When they arrived, Garrison talked to Gindy for a minute about getting his cousin to purchase pain pills from Gindy as she had done before.[37] He left Gindy sitting in the cab so he could locate his girlfriend and check with his cousin about the pills.[38]

Kecia Blair was standing at her apartment window waiting for her cousin to arrive when she saw the cab pull up and Garrison get out of the passenger back seat.[39] As Garrison left the cab, he

---

[31]St. Rec. Vol. 1 of 10, Trial Transcript, pp. 25, 26 (James), 10/17/07.

[32]St. Rec. Vol. 2 of 10, Trial Transcript (continued), p. 95 (Detective Keith Locascio), 10/17/07.

[33]*Id.* at 96 (Locascio).

[34]*Id.* at 42-43 (Dr. Fraser MacKenzie).

[35]*Id.* at 49.

[36]*Id.* at 54-55, 81 (Garrison).

[37]*Id.* at 56, 75 (Garrison).

[38]*Id.* at 57-58 (Garrison).

[39]*Id.* at 183 (Keva Blair).

saw Page and "Poppa" nearby in the parking lot.[40]  Earlier in the evening, Williams had also seen

Page and Junior hanging out at the complex.[41]  She overheard their conversation as she walked up

the stairs to her apartment.  She understood Page's slang comments to mean that they would be

hanging out looking for a way to make some money or rob someone.

As Williams returned from the store, Garrison found her and the two went to his cousin Keva

Breaux's apartment.[42]  The couple got into an argument about breaking up their relationship.[43]

In the meantime, Blair noticed from her apartment window that the cab stayed parked for

about five or ten minutes.[44]  She briefly stepped away to answer her phone, and when she returned

to the window, she saw Page and Junior walk out and get into the back seat of the cab.  She recalled

that Page got in on the passenger side and Junior got in on the driver side.[45]  She became concerned

that the cab sat too long, about two or three minutes after they got in, so she went to get her

brother.[46]

During that time, Garrison and Williams continued to argue in the other apartment.

Concerned that time was passing, Garrison tried to call Gindy to make sure he waited, but his wife

answered because Gindy had left the phone at home.[47]  Garrison and Williams continued to argue,

---

[40]*Id*. at 58 (Garrison).

[41]*Id*. at 139-40 (Williams).

[42]*Id*. at 53, 58, 74 (Garrison); p. 142 (Williams).

[43]*Id*. at 58 (Garrison); p. 143 (Williams).

[44]*Id*. at 183 (Blair).

[45]*Id*. at 184 (Blair).

[46]*Id*. at 187-88, 191 (Blair).

[47]*Id*. at 60 (Garrison); p. 142 (Williams).

and soon they heard a gunshot.[48]  Blair also heard the gunshot from her apartment.[49]  Blair went back to the window and saw Page and Junior walking off at a fast pace towards one of the buildings.

After the shot, Williams went to the back window of their apartment and then to the balcony out of the front door, when she heard sirens as the police arrived.[50]  She eventually went downstairs and saw the police gathering behind a parked cab.[51]  When she returned to the apartment, she and Garrison decided not to be together anymore, and he left to go downtown.  When he heard back from Williams about an hour and one-half later, she told him that it was Gindy's cab.  Garrison called Gindy's wife to tell her what happened.

The jury also heard the recorded statement given by Page to the investigating officers on January 10, 2007.[52]  In that statement, Page admitted that he was present when the murder occurred, but he denied shooting the cab driver.[53]  He told officers that Junior shot the cab driver.[54]  He stated that, while they were in the parking lot, Junior retrieved a long camouflaged weapon out of the bushes and approached the cab.[55]  Junior demanded money from the cab driver, the man said no, so

---

[48]*Id*. at 60 (Garrison); p. 142 (Williams).

[49]*Id*. at 188 (Blair).

[50]*Id*. at 142 (Williams).

[51]*Id*. at 61-62 (Garrison); p. 143 (Williams).

[52]St. Rec. Vol. 3 of 10, Trial Transcript (continued), p. 238, 10/17/07; St. Rec. Vol. 8 of 10, Transcript of Page's Statement, 1/10/07.

[53]St. Rec. Vol. 8 of 10, Transcript of Page's Statement, pp. 4-5, 1/10/07.

[54]*Id*. at 5.

[55]*Id*. at 6-7.

Junior shot him.[56]  Page denied that he or Junior got in the cab.[57]  Page admitted that he was standing nearby on the driver's side of the taxi when Junior shot the man from the passenger side.  He was standing in a position where the cab driver could see him if the driver turned, but the driver was focused on Junior.[58]

The jury had before it sufficient evidence to establish that Page and Junior were together at the apartment complex throughout the evening.  The evidence, including Page's own statement, also established that Gindy was killed during the attempted armed robbery.  Page placed himself at the scene as it developed and he was alongside the cab when the attempted robbery and shooting actually took place.  Other evidence pointed to Page himself was in fact the trigger man.

Thus, at a minimum, the evidence established that Page was a principal to the murder, if not the shooter, which occurred during the attempted armed robbery.  As such, Page was guilty of second degree murder even if he had "no intent to kill or to inflict great bodily harm."  La. Rev. Stat. Ann. § 14:30.1(A)(2).  The Court has no basis to disturb the jury's decision to believe the State's witnesses and the inculpatory evidence over Page's self-serving, recorded statement in reaching their guilty verdict.

The evidence was sufficient under *Jackson* to support the jury's verdict.  The state courts' denial of relief was not contrary to or an unreasonable application of federal law.  Page is not entitled to relief on this claim.

---

[56]*Id*. at 7.

[57]*Id*. at 9.

[58]*Id*. at 8.

**VI.**      **Effective Assistance of Counsel (Claim No. 2)**

Page alleges that he received ineffective assistance from his trial counsel based on several grounds: (a) counsel failed to request a limiting instruction on the other crimes rebuttal evidence; (b) counsel failed to object to the definition on the law of principals which unconstitutionally relieved the State of its burden of proving specific intent; and (c) counsel failed to perform pretrial investigation or require that the jury be present to receive additional instructions during deliberations.   The State argues that the claims are meritless and were properly resolved by the Louisiana courts.

Page's counsel raised these same arguments on state post-conviction review.[59]   The Trial Court, relying on the holding in *Strickland v. Washington*, denied each of Page's ineffective assistance of counsel claims.[60]   The Court found no basis for counsel to have requested a limiting charge because, as the Louisiana Fifth Circuit affirmed on appeal, the State's rebuttal evidence was not impermissible other crimes evidence.   The Court found that no error by counsel where the State relied on both specific intent and felony murder at trial, and armed robbery was a general intent crime.   The Court also referenced the Louisiana Fifth Circuit's finding on direct appeal that the jury charges on principals and criminal intent were proper.   The Court also denied relief on the final ground because Page failed to establish prejudice or that the outcome of the trial would have been different and the arguments were otherwise speculative and conclusory.

---

[59]These arguments are taken almost verbatim from those urged in the counsel-filed state post-conviction applications.

[60]St. Rec. Vol. 8 of 10, Trial Court Order, 9/20/11.

This was the last reasoned opinion on these issues, as they were adopted and affirmed by the Louisiana Fifth Circuit in denying his subsequent writ application, and the Louisiana Supreme Court also denied relief without stated reasons.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, applied by the Louisiana courts, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under

21

prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S.Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S.Ct. at 792. In making a

determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  *Harrington*, 131 S.Ct. at 788.  The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential."  *Cullen*, 131 S.Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)."  *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

A.     **Failed to Request a Limiting Instruction**

Page claims that his trial counsel was ineffective when he failed to request that a limiting instruction be given to the jury related to the other crimes evidence presented during the State's rebuttal.  Prior to its presentation, Page's counsel objected to the testimony as improper other crimes evidence about Page's prior arrests.  The State argued that the rebuttal testimony would establish that Page had been told to leave the Villa D'Ames property three times prior to the murder and that it would not reference any arrests or specific criminal activity.  The Trial Court allowed the testimony to be presented to the jury without further comment.

In *State v. Prieur*, 277 So.2d 126 (La.1973), the Louisiana Supreme Court held that evidence of other acts of misconduct is generally not admissible to show the defendant's bad character, but that such evidence is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is part of the subject of the present proceeding. *See also* La. Code Ev. art. 404(B)(1); *State v. Jackson*, 625 So.2d 146, 148 (La. 1993).  Under Louisiana law, to constitute impermissible other crimes evidence, the evidence must unambiguously implicate the defendant in another crime and not meet one of these approved uses.  *State v. Edwards*, 406 So.2d 1331, 1349 (La. 1981); *State v. Holmes*, 841 So.2d 80 (La. App. 4th Cir. 2003).  When other crimes evidence is admitted in a jury trial, upon the defendant's request, a Court must charge the jury as to the limited purpose for which the evidence is to be considered.  *State v. Curington*, 51 So.3d 764 (La. App. 5th Cir. 2010) (citing *State v. Nguyen*, 888 So.2d 900, 909-10 (La. App. 5th Cir. 2004).

Based on these standards, the Louisiana Fifth Circuit on direct appeal upheld the Trial Court's decision to allow the State's rebuttal testimony.  The Court held that the rebuttal testimony

was <u>not</u> evidence of other crimes or bad acts prohibited by La. Code Ev. art. 404(B).  The Court found that the testimony revealed only that Page and several other people had been asked by security to leave the complex property in the six months prior to the shooting.  The testimony also did not implicate Page in a prior arrest or criminal activity.  The Trial Court and the Louisiana Fifth Circuit reiterated these findings and relied on them in determining on post-conviction review that Page's counsel did not act contrary to *Strickland*.

First, the Court recognizes that it does not sit to review the state courts application of its evidentiary rules.  *See Swarthout v. Cooke*, __ U.S. __, 131 S.Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Jernigan*, 980 F.2d at 298.  The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)).  The Court will give deference to the state courts' determination that the evidence was not impermissible other crimes evidence.

Thus, because the rebuttal testimony was not evidence of other crimes, Page's counsel was not obligated to request a limiting instruction, or seek other relief at trial from the presentation of the evidence.  Counsel does not act deficiently when he fails to urge a meritless or baseless position. *See Clark v. Thaler*, 673 F.3d 410, 429 (5th Cir. 2012), *cert. denied*, __ U.S.__, 133 S.Ct. 179 (2012) ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance") (quoting *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the

very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).

Page has not demonstrated that counsel acted outside of the reasonable performance addressed under *Strickland*. The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, federal law. He is not entitled to relief on this claim.

### B.       Failed to Object to Jury Instructions

Page also complains that his counsel failed to object to the definition on the law of principals which unconstitutionally relieved the State of its burden of proving specific intent. As addressed previously in this report, Louisiana defines principals as "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La. Rev. Stat. Ann. § 14:24. This is the same language the Trial Court read to the jury at Page's trial.[61]

In addition, as previously reported, second degree murder is defined in Louisiana as a specific intent crime and as a general intent crime under the felony-murder prong. In Page's case, the Trial Court instructed the jury on both specific intent and general intent.[62] The instructions given by the Trial Court mirror the statutory definitions. As shown above, specific intent is defined in Louisiana as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. Ann. § 14:10(1).

---

[61]St. Rec. Vol. 3 of 10, Trial Transcript, p. 101-02, 10/18/07; St. Rec. Vol. 1 of 10, Jury Charges, p.7, 10/18/07.

[62]St. Rec. Vol. 3 of 10, Trial Transcript, p. 102, 10/18/07; St. Rec. Vol. 1 of 10, Jury Charges, pp. 6-7, 10/18/07.

On direct appeal, the Louisiana Fifth Circuit addressed the validity of the Trial Court's jury instructions on the definition of principals and criminal intent, with respect to both the specific intent and felony murder (general intent) prongs of second degree murder.  The Court determined that the Trial Court's charges were accurate under Louisiana law and did not lessen the State's burden of proof.  The Trial Court and the Louisiana Fifth Circuit reiterated these findings and relied on them in determining on post-conviction review that Page's counsel did not act contrary to *Strickland*.

The state courts have resolved that the charges were proper under Louisiana law and there is no basis for this Court to question that ruling.  *See Swarthout*, 131 S.Ct. at 861 (2011); *Bradshaw*, 546 U.S. at 76.  Page's counsel had no basis to object to the charges and did not act deficiently in failing to do so.  *See Clark*, 673 F.3d at 429.

Page has not demonstrated that counsel acted outside of the reasonable performance addressed under *Strickland*.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, federal law.  He is not entitled to relief on this claim.

C.   **Failed to Perform Pretrial Investigation and Require Jury's Presence for Additional Instructions**

Page suggests that his counsel failed to perform pretrial investigation and act unreasonably in failing to require that the jury be present to receive the additional instructions they sought during deliberations.  Page also implies that his counsel's overall performance, including his decision to leave Michael Knox on the jury and his failure to file a motion to "reveal the deal" the State had with Darnell Junior, to present corroborating evidence for Page's pretrial statement, and to present a connection between the phone records, fingerprints and handwriting samples with the other potential suspects, Junior and Garrison.  The State argues that Page has failed to present more than conclusory statements and is not entitled to relief on this claim.

When considering these claims on post-conviction review, the Trial Court found that Page failed to prove that any of the alleged errors by his trial counsel were prejudicial or how counsel's actions changed the outcome of the trial.  The Court deemed the arguments speculative and conclusory and held that Page had not established either prong under *Strickland*.  On review, the Louisiana Fifth Circuit agreed and found no error in the Trial Court's ruling and the Louisiana Supreme Court had no further comment.

To be successful under *Strickland*, a petitioner "'who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"  *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)); *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998).  The petitioner must provide factual support demonstrating what exculpatory evidence further investigation would have revealed.  *Moawad*, 143 F.3d at 948; *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).  A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result.  *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696).  For these reasons, brief and conclusory allegations that the attorney's representation was deficient because of a failure to investigate and develop useful evidence will not suffice.  *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

In this case, Page has fallen well short of proving the existence of exculpatory evidence that would have been found through further investigation.  Furthermore, much of what he suggests

counsel should have looked into could have revealed additional <u>inculpatory</u> evidence to establish that he was in the cab and that he was more involved in the shooting than his pretrial statement suggested.   Furthermore, as Page repeats throughout, there was no physical evidence to link him to the murder scene.

Page has offered nothing to the state courts, and nothing here, but broad and speculative assertions that the fingerprints, handwriting and phone records would have pointed to the culpability of Junior and Garrison and not to himself.  "Failure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise." *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir.1997); *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999).  It was reasonable for the state courts to find that counsel's decision to leave well enough alone in light of the lack of physical evidence falls within the protected sphere of sound trial strategy under the *Strickland* standards.

Page also suggests that counsel should have required that the jury be present in the courtroom to receive additional charges from the Trial Court during deliberations in accordance with state law.  Page has not established that any such charges were actually given and none are noted in the Trial Court's record.  The copy of the jury's note indicates that the transcript of Page's pretrial statement and request for additional definitions is scratched through as if withdrawn or rejected.[63] The minutes indicate, as does the note, that the jury only requested to see the photographs in

---

[63]St. Rec. Vol. 1 of 10, Jury's Question, 10/18/07.

evidence.[64]   Page, therefore, has failed to prove that the jury was recharged or that any error occurred.

In addition, Page contends that counsel erred in failing to request that the State "reveal the deal" made with Junior.  This apparently is a reference to the long standing premise that the State is obligated to disclose information that could be used to impeach the testimony of a witness for the prosecution, including any agreements with witnesses for testimony in return for monetary benefit or for more favorable treatment within the criminal justice system.  *See Giglio v. United States*, 405 U.S. 150 (1972).  The disclosure of plea agreements is particularly important where the case against the defendant depended almost entirely upon the testimony of cooperating witnesses.  *Giglio*, 405 U.S. at 154-55.

In this case, Page's contention is wholly misplaced.  As the State has urged in its opposition memorandum, the prosecution's case did not rely on Junior since Junior did not testify at Page's trial.  Again, counsel was not obligated to urge a baseless and unnecessary motion.

The Court also notes that Page has offered no explanation for his comment about counsel allowing Michael Knox to be on the jury.  Page is obligated to support his contentions with specificity which he has not done here.  *See Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005) ("In his petition to this Court, Petitioner merely lists his ineffective assistance complaints in summary fashion, without discussing the legal and factual basis for each complaint.  In failing to brief his ineffective assistance of counsel complaints adequately, Petitioner has waived those claims.").  The Court recognizes that Page's counsel raised and argued a similar issue in the state courts on post-conviction review.  The state courts determined that there was no basis for Knox to

---

[64]*Id.*; St. Rec. Vol. 1 of 10, Trial Minutes, 10/18/07.

have been removed for cause under Louisiana law and no basis to find that but for Knox's presence on the jury, the result would have been different.  Page has offered nothing more to this Court to refute or overcome the deference owed those findings.

Page has not demonstrated that counsel's performance fell below the standard of reasonableness or that the state courts' denial of relief was contrary to, or an unreasonable application of, *Strickland*.  He is not entitled to relief on this claim.

## VII.   <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that David Page's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[65]

New Orleans, Louisiana, this 14th day of August, 2013.

KAREN WELLS ROBY
**UNITED STATES MAGISTRATE JUDGE**

---

[65]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.